**David A. Stickelber, Appellant, v. The Lyric Theatre of Chicago, a Corporation, Appellee.**

**Gen. No. 48,850.**

First District, Second Division.

October 1, 1963.

Rehearing denied November 19, 1963.

John Benedek, and Benedek & Benedek, of Chicago, for appellant.

James P. Chapman, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court:

On March 26, 1957 plaintiff had judgment by confession for $9600 in the Municipal Court of Chicago upon a promissory note dated April 30, 1956, payable to him, and executed by The Lyric Theatre of Chicago. Betty McAllister, vice-president, and Lawrence V. Kelly, secretary-treasurer, signed the note on behalf of defendant. Subsequently, on May 28, 1957, defendant moved to vacate the judgment by confession, to quash the writ of execution, and to dismiss the suit, on the grounds primarily that the note was the obligation of Mr. Kelly, and that Mrs. McAllister and Mr. Kelly had neither express nor implied authority as officers of defendant to execute the note. On June 11, 1957 the court opened the judgment by confession, granted defendant leave to appear and defend, directed that a trial be had notwithstanding the judg-

ment, that the judgment stand as security, that defendant's motion to vacate stand as its affidavit of defense, and that execution be stayed until further order of court. Thereafter the case was fully tried on its merits, and the court entered judgment in favor of defendant, from which plaintiff appeals.

This case arose out of the Lyric corporate battle. Defendant was organized March 31, 1952 under the General Not for Profit Corporation Act (Ill Rev Stats 1963, c 32, §§ 163a–163a100) "to promote, provide and produce Opera in Chicago, Illinois." The bylaws of defendant provided that "the affairs of the corporation shall be managed by its board of directors." In February 1956 the Lyric board became deadlocked, with the result that the corporation was unable "to operate and carry out its purposes," as well as to solicit public funds which were necessary to present opera in Chicago. The board was made up of two opposing factions, one of three directors, including Carol Fox, the Lyric president, the other of three directors, led by Lawrence Kelly, secretary-treasurer, and including Betty McAllister, vice-president. On April 16, 1956 three creditors of Lyric filed a petition in the Superior Court requesting the appointment of a receiver as a means of resolving the deadlock in management. These creditors were represented by Herbert M. Lautmann and Edwin A. Rothschild of Sonnenschein, Lautmann, Levinson and Berkson. On April 20, 1956 Herldon H. Bowen and Horace A. Young filed their appearance on behalf of Lawrence V. Kelly. Judge Lupe, to whom the matter had been assigned, concluded that Lyric was insolvent, and a receiver was to be appointed on May 2, 1956. On that day, however, Mr. Bowen, in open court, displayed three envelopes which, he announced, contained in currency the exact amounts due the petitioning creditors, and he thereupon tendered these envelopes to Mr. Rothschild. At

381

this point in the proceedings, John B. Schmidt, the Lyric attorney, stated that the corporation had not authorized this payment to be made on its behalf, and he asked Mr. Bowen whether Lyric would be obligated to any person to repay these funds. Mr. Bowen replied that the money represented voluntary contributions by friends of Lyric whose names he was not free to disclose, and he affirmatively stated to Mr. Schmidt that the payments would place no obligation on Lyric. Mr. Rothschild then accepted the tendered funds on behalf of the creditors whom he represented, Judge Lupe dismissed the case, and the appointment of a receiver was avoided. However, the Lyric directors remained deadlocked. Lyric at that time owed over $50,000 to the Federal government by reason of the nonpayment of withholding taxes for its employees.

On May 4, 1956, two days after Judge Lupe dismissed the case, Carol Fox and Tillman Lusk, as directors of Lyric, filed a complaint in the Superior Court requesting the appointment of a receiver to settle the management stalemate which continued to stifle all corporate activity. Messrs. Bowen and Young appeared in this proceeding on behalf of Mr. Kelly and Mrs. McAllister, and opposed the action suggested. Plaintiffs prevailed, however, and the court appointed Augustine Bowe as receiver pendente lite. After investigation and attempts at resolution of the controversy, Mr. Bowe petitioned for the appointment of a liquidating receiver, alleging that Lyric and its corporate assets, rights, and other intangibles would suffer irreparable injury if Lyric were permitted to continue under the stewardship of its hopelessly deadlocked board of directors. Thereafter, on June 4, 1956, Judge Marovitz, who was then hearing the matter, found in effect that the deadlock of the directors had prevented the solicitation of public funds necessary to the presentation of opera in Chicago, had prevented

contractual and other operational arrangements necessary to the presentation of the 1956 opera season, had jeopardized the prospect of presenting opera in Chicago in 1956, with consequent possibilities of serious liabilities to artists then under contract, that the corporation's assets, rights, and other intangibles would become worthless unless promptly disposed of, and that in all these respects had caused Lyric to suffer irreparable injury and threatened further irreparable injury. At the conclusion of the hearing he appointed Mr. Bowe liquidating receiver, directed him to take possession of all the assets and funds of Lyric, authorized him to proceed with the liquidation, ordered that Lyric be dissolved, that the receiver thereafter be discharged, and provided for the court to retain jurisdiction until further order. The subsequent decree of dissolution recited that all Lyric's property and assets had been turned over to Opera Theatre Association, which assumed all Lyric's debts and obligations, that the association had applied these assets to the payment of such debts and obligations, and that "claims presented by various trade creditors of The Lyric Theater of Chicago have been paid." The alleged obligation of $9600 involved in this proceeding was not presented as an obligation of Lyric. This item was given consideration by the court in its order of June 4, 1956. With respect thereto the court concluded that a contribution through the medium of third parties had been made; the order states that "on or about May 2, 1956, notes payable in the amount of $9,000 and accounts payable in the amount of $650.65, were paid by 'anonymous parties' with funds which did not belong to the corporation."

In connection with the present suit, defendant, in support of its motion to vacate the confession judgment, filed an affidavit executed by Carol Fox, setting forth in detail the meritorious defenses upon which it

383

relied to vacate the judgment. One of the defenses read: "At no time did The Lyric Theatre of Chicago borrow any money, receive any funds, or have any transactions whatsoever with plaintiff."

Plaintiff testified that he lived in Kansas City, Missouri, and was a close personal friend of Mr. Kelly; that he knew Carol Fox was the Lyric president; that he was aware that Lyric was experiencing "management difficulties"; and that on April 30, 1956 Mr. Kelly asked him for a $9600 loan. Plaintiff telephoned Mrs. McAllister in Chicago and requested a loan from her of $5000 which she was to turn over to Mr. Kelly and then be repaid when Mr. Kelly repaid plaintiff. Plaintiff appeared to profess ignorance when asked why Mr. Kelly, in Chicago, did not borrow the $5000 directly from Mrs. McAllister who, like Mr. Kelly, was in Chicago. But plaintiff testified unequivocally that he borrowed $5000 from Mrs. McAllister, used $4600 of his own money, and made a loan in the amount of $9600 to Mr. Kelly, and Mr. Kelly only, not a loan to Lyric. His testimony appears in the record as follows:

"Q Are you testifying that you borrowed $5,000 from Mrs. McAllister for the purpose of loaning it to Mr. Kelly?

" . . .

"Q Wasn't Mr. Kelly able to borrow the money directly from Mrs. McAllister?

"A I don't know that. He asked me for the loan, and that was all I was concerned about. I said that I would get the loan for him.

"Q And did you say you would get the whole $9,600 for him?

"A Yes.

"Q And the $4,600 was loaned to Mr. Kelly, the same thing?

"A Yes."

384

Plaintiff's check was made payable to L. V. Kelly, and was cashed by Mr. Kelly at his personal bank, The Northern Trust Company. The check was not made payable to Lyric's order; it was not deposited in Lyric's account, nor was it cashed at Lyric's bank.

Mrs. McAllister testified that she had received a long distance call from plaintiff requesting a loan of $5000 to be made available to Mr. Kelly "to help him with this case in court," and to be repaid to her when Mr. Kelly repaid plaintiff. The agreement between Mrs. McAllister and plaintiff was entirely verbal. Mrs. McAllister procured $5000 in cash and turned it over to Mr. Kelly in Chicago. She was aware that at the time of these transactions the Lyric board was stalemated, that the creditors' receivership proceedings sought to resolve the stalemate, and that the creditors were being paid off by Mr. Kelly to avoid the appointment of such a receiver. She replied in the affirmative when she was asked: "Did you understand the creditors were suing to have a receiver appointed so that this public corporation would be taken out of the stalemated condition that it found itself in?"

On May 2, 1956, just prior to the hearing before Judge Lupe, Mr. Kelly delivered $9600 in cash to Mr. Bowen, who was representing him. Mr. Bowen tendered these funds to the creditors in open court with the representation that the monies were voluntary contributions by anonymous donors without any obligation accruing to Lyric. It appears that no one disclosed to Judge Lupe the existence of the Stickelber note; indeed, no such disclosure was possible, for Mr. Bowen had definitely stated that no liability would be incurred by Lyric.

The circumstances surrounding the execution of the note were somewhat mysterious. According to Mr. Kelly, he prepared the note without legal assistance,

and then took it to Mrs. McAllister's residence for her execution and his attestation. No other officer, director, or member of Lyric was present at any stage of these transactions. Mrs. McAllister admitted that she had not previously executed a Lyric note, that she knew of no board resolution authorizing her to execute the note, and that she did not know if the bylaws provided such authorization.

At the trial in the Municipal Court, James P. Chapman, counsel for Lyric, and Lee A. Freeman, who represented certain officers and directors of Lyric, reviewed the proceedings had before Judge Lupe and Judge Marovitz. After considering this background material and the pleadings and briefs filed by counsel, and after hearing the evidence, Judge Wachowski found the issues for defendant. The undisputed facts support his conclusion that Mr. Kelly and Mrs. McAllister paid $9600 of their own funds to Lyric creditors in a futile attempt to preserve their position on the Lyric board. Plaintiff contends that the evidence is conflicting. It is true that he requested a note with a confession of judgment clause. However, if he intended to loan funds to a corporation rather than to an individual, it is strange that he neglected to draw the check to the order of Lyric, the alleged borrower, or that he failed to limit the use of the proceeds of the check by endorsement or otherwise, or to procure a promissory note executed by the president of Lyric or supported by corporate resolution. Plaintiff testified unequivocally that he loaned the money to Mr. Kelly, and plaintiff's every act in forwarding the $4600 to Chicago is consistent with a personal loan to Mr. Kelly.

As to Mrs. McAllister, it appears that she advanced the remaining $5000, which plaintiff now claims is due him, pursuant to a long distance telephone conversation with plaintiff, to the effect that

these monies would actually constitute a loan to him, and that he would repay her when Mr. Kelly repaid him. The trial judge evidently rejected this testimony as inconsistent with other admitted facts. The record supports his conclusion that the Stickelber-McAllister transactions indicated nothing more than a contribution of $5000 on the part of Mrs. McAllister as her share of the joint Kelly-McAllister venture; she made the money available and later executed a confession promissory note to plaintiff in an attempt to bind Lyric. There is also the salient fact that Mr. Bowen, Mr. Kelly's attorney, informed the court and the attorneys representing Lyric that the monies represented voluntary contributions by friends of Lyric and that no liability would be incurred by Lyric. Since Lyric was a not for profit corporation which received funds in the form of donations, this representation was accepted. It is significant that neither Mr. Kelly nor Mrs. McAllister, who were both parties defendant to the Lyric dissolution suit, informed the court of the Stickelber note, although the liquidating receiver was collecting claims of Lyric creditors. Instead, the payments made in Judge Lupe's court on May 2, 1956, which totaled $9650.65, were carefully considered by Judge Marovitz, and in his order of June 4, 1956 he found them to have been discharged "by 'anonymous parties' with funds which did not belong to the corporation." It is pertinent to inquire why, if the Stickelber note was in existence prior to the Lyric dissolution, Mr. Kelly would not have so informed the court, both because of his duty as a corporate officer and director and because of a sense of obligation to a close friend who allegedly aided Lyric in time of need. The foregoing facts surrounding the incident contradict the positive testimony of plaintiff and his interested witnesses and fully support the trial court's conclusion that plaintiff failed in the Municipal Court

to sustain his burden of proving that the funds in question were loaned to defendant. There is nothing in this record to indicate that Mrs. McAllister or Mr. Kelly had authority to negotiate the loan or execute the note sued upon.

█ Plaintiff's reliance on the theory of quantum meruit is an afterthought; it was not urged in the trial court. The contention was first made on defendant's motion to vacate the judgment, entered against him in the municipal court. We hold that quantum meruit does not afford a basis of recovery here. As stated in ILP Contracts § 4 (pp 186–187):

> ". . . contracts based on promises implied in fact arise on circumstances being proved which, according to the ordinary course of dealing and the common understanding of men, show that it is in law regarded as sufficient for a mutual intent to contract.
>
> "An implied contract in fact cannot be thrust on a person by the court without his consent." (Footnotes omitted.)

Also in point is Voit Rubber Co. v. Peoria Coca Cola Bottling Co., 280 Ill App 14 (1935).

█ The question to be resolved is whether the $9600 was loaned to Lyric or to Mr. Kelly. The court, after full hearing, decided in favor of Lyric. The record supports the court's finding. Accordingly, the judgment of the Municipal Court is affirmed.

Judgment affirmed.

BURKE, PJ and BRYANT, J, concur.